JAMES OSBORN *versus* NATHANIEL K. SARGENT.

By the Rev. Stat. a justice of the peace has the same power to examine persons brought before him on complaint and warrant, and bind them over to appear at a higher Court, where the offence charged may be prosecuted *by indictment or by action of debt*, as where it can be prosecuted by indictment only.

A justice of the peace has authority, under the Rev. Stat. to examine a person brought before him, on complaint and warrant, accused of being a common seller of wine, brandy, rum and other strong liquors, without license therefor; and, on sufficient cause shown to believe him to be guilty of the offence charged, to require him to enter into recognizance for his appearance at the next District Court within the county; and, on his refusal so to do, to cause him to be committed to jail until he shall comply with such order.

TRESPASS for an alleged illegal arrest and false imprisonment.

On March 1, 1842, a complaint was made against the plaintiff and his partner in business as traders, alleging that they, "on the first day of August, eighteen hundred and forty-one, and from that day to the first day of March, eighteen hundred and forty-two, at said Kennebunk, did presume to be, and were, and have been common sellers of wine, brandy, rum and other strong liquors by retail and in less quantities than twenty-eight gallons, and that delivered and carried away all at one time, not being authorized therefor, and not having given bond therefor, against the peace of said State of Maine, and contrary to the form of the statute in such cases made and provided;" and praying that they might be arrested to answer to the complaint, &c. The complaint was made under oath, and a warrant was issued, and the plaintiff was arrested thereon, and the warrant returned before the defendant, a justice of the peace. The plaintiff there pleaded to the jurisdiction of the justice, alleging that he had no jurisdiction of the offence charged, and declined to make any other plea. The justice overruled the plea, and proceeded to the examination of witnesses, and found the plaintiff and his partner "guilty as in said complaint alleged, and they were severally ordered to recognize to said State in the sum of one hundred dollars each, with one surety in the sum of one hun-

dred dollars, to appear" at the then next term of the District Court, "and to stand committed till sentence be performed." The plaintiff refused to enter into recognizance, and thereupon the defendant made out a mittimus, and the plaintiff was arrested·thereon, committed to the common jail at Alfred, and on the same day released therefrom, on entering into recognizance.

On the trial of this action the defendant justified the imprisonment as a justice of the peace, and produced copies of the proceedings in due form. It appeared that the question of jurisdiction was argued fully before the justice by counsel, and that he examined the authorities cited, and finally decided that he had jurisdiction.

At the trial of this action the counsel for the defendant objected that it could not be maintained ; but WHITMAN C. J. presiding, instructed the jury, that the plaintiff was entitled to recover, and they returned a verdict in his favor. The defendant filed exceptions to this instruction.

*Bourne,* for the defendant, contended, that as this was a suit against a justice of the peace for misconduct in office, it could not be maintained without proof that notice had been given thirty days before the commencement of the action. It is necessary that this should be done, that the justice might have an opportunity to make tender of amends. St. 24 Geo. 2, c. 44, § 1 ; Burns' Justice, 238.

Justices of the peace have power at common law to bind over, to answer at a higher Court, all such as appear to be guilty of an indictable offence. *Boynton* v. *Rees,* 9 Pick. 532; *Commonwealth* v. *Churchill,* 2 Metc. 118; *Com.* v. *Leach,* 1 Mass. R. 58; *Sackett* v. *Sackett,* 8 Pick. 309; *Pierce* v. *Atwood,* 13 Mass. R. 324 ; 1 Dall. 74; *Colby* v. *Merrill,* 3 Greenl. 55 ; *Commonwealth* v. *Knowlton,* 2 Mass. R. 534; Story's Pl. 536 ; 17 Mass. R. 92; 2 Fairf. 288.

By the old statutes of Massachusetts a justice of the peace, in a case like this, had power to bind over to answer at a higher Court such as were shown to be guilty on the examination. *U. S.* v. *Wiltberger,* 5 Wheat. 95; 1 Kent, 466, 468,

and notes; *Fayette* v. *Hebron*, 21 Maine R. 271 ; *Lord* v. *Lancey, ib.* 469 ; *Doane* v. *Phillips*, 12 Pick. 226 ; *Jones* v. *Jones*, 18 Maine R. 313 ; *Foster* v. *Medfield*, 3 Metc. 1 ; *State* v. *Bailey*, 21 Maine R. 68. Opposed to this position stands alone the case of *Commonwealth* v. *Cheney*, 6 Mass. R. 347. He examined this case, and insisted that it stood opposed to all other authorities, and contrary to the well established principles of law on this subject. He cited 10 Pick. 506 ; 11 Pick. 490 ; 2 Sumn. 164 ; 5 Dane, 245 ; 2 Bac. Abr. 14 ; 5 Mass. R. 259 ; 2 Kent, 11 and note ; 9 N. H. R. 468 ; 2 Mass. St. 792 ; Mass. St. 1783, 1 Mass. Laws, 374 ; Maine St. 1821, c. 171, § 1 ; and various other statutes relating to incendiaries, robberies, larcenies, &c. and contended that there was no difference between them and this in principle, and yet the practice had always been for a justice to bind over persons charged with such offences to appear at a higher court. 1 Gallison, 1 ; 2 Conn. R. 38 ; *State* v. *Bailey*, 21 Maine R. 67 ; *Commonwealth* v. *Phillips*, 16 Pick. 214. The case last cited is wholly inconsistent with *Commonwealth* v. *Cheney.* 8 Serg. & R. 91 ; 5 Cowen, 253 ; 6 Dane, 601, 682. After an eulogy on the late Chief Justice Parsons, he remarked, that however great may be the reverence, and though all the sympathies of the bar in New England may cluster around his memory, no such reverence is due to him, or to any other Judge, as that the profession should not at all times freely express their opinion, that their decisions are not law, whenever such is the fact ; and trusted that this Court, notwithstanding the scurrilous and contemptible aspersions of anonymous writers in another State, will not hesitate to overrule any decision of any Court which is not sustained by authority, legal principles, or practice.

He also contended, that if the case, *Commonwealth* v. *Cheney*, was to be received as good law at the present day, still that our Rev. Stat. varied from the old Massachusetts statutes, and gave power to justices of the peace, which protected the defendant. Rev. Stat. c. 170, § 3, 4, 5, 6 ; c. 171, § 16, 17.

*Bradley* and *Leland*, for the plaintiff, contended that the defendant had not, as a justice of the peace, jurisdiction in the case; and that his acts were illegal and void.

He had no jurisdiction at common law. *Commonwealth* v. *Foster*, 1 Mass. R. 490; *Commonwealth* v. *Knowlton*, 2 Mass. R. 535; *Bridge* v. *Ford*, 4 Mass. R. 644; *Commonwealth* v. *Otis*, 16 Mass. R. 199; *Martin* v. *Fales*, 6 Shepl. 28.

Nor had he jurisdiction by the general statute, (Rev. Stat. c. 170,) entitled " of the power and proceedings of justices of the peace in criminal cases." Sections 1, 2, 4, 5, 6, are a transcript of Stat. of 1821, c. 76, § 1, entitled " An act describing the power of justices of the peace in civil and criminal cases," which is referred to in the margin of the Rev. Stat. Section 3 of the Rev. Stat. is a transcript of part of § 1 of Stat. 1823, c. 235, entitled " An act to prevent unnecessary costs in criminal prosecutions." It is not, therefore, intended to enlarge the power of justices, but to restrain it. The Stat. 1821, c. 76, is a transcript of the Stat. 1783, c. 51. This latter statute has received a judicial construction in *Commonwealth* v. *Cheney*, 6 Mass. R. 347. By the re-enactment of this latter statute, the judicial construction, before given to it, was adopted with it.

Nor had the defendant any authority, to justify his acts, under the license act of Rev. Stat. c. 36; or by that in connexion with Rev. Stat. c. 170. The sixth section of the latter statute, as has been said, is a transcript of the Stat. 1821, c. 76, which was a transcript of Stat. 1783, c. 51. The case *Commonwealth* v. *Cheney*, 6 Mass. R. 347, decided long before the enactment of the Stat. 1821, is directly in point in our favor. And in *Commonwealth* v. *Churchill*, 5 Mass. R. 176, Parsons C. J. says, "Hawkins lays down the law generally, that whenever any suit on a penal statute may be said to be actually pending, it may be pleaded in abatement of a subsequent prosecution, being expressly averred to be for the same offence." Now an indictment is a prosecution, and an expensive one, for on it, the accused can be arrested and

imprisoned or held to bail; and if acquitted, he cannot recover costs. The suit and the indictment are but different modes of recovering the same penalty, and no power is given by either of the statutes to anticipate the right to bring a suit for the penalty by a complaint before a justice. The statute remedy for the recovery is by suit or indictment only, and not by suit or complaint before a justice. Where a statute creates a new offence, by prohibiting and making unlawful any thing which was lawful before, and provides a remedy against such new offence by a particular method of proceeding, such method of proceeding must be pursued, and none other. 1 Russel on Crimes, 49; Hawk. B. 2, c. 26, § 17; Jacob's Law Dic. title, Information; *Wiscassett* v. *Trundy*, 3 Fairf. 204.

The opinion of the Court was drawn up by

Tenney J. — The plaintiff contends that the warrant to apprehend him for the offence charged in the complaint on which it was issued, was unauthorized; and that consequently the commitment of him to prision, which was ordered by the defendant, was a trespass, for which he is entitled to damages. In support of this position, he relies upon the case of the *Commonwealth* v. *Cheney*, 6 Mass. R. 347, and insists, that the decision is a construction of a statute, which has been re-enacted in the Revised Statutes of this State, and therefore has been legislatively adopted; but if otherwise, that it is applicable to and decisive of the case now before us.

It is a well settled rule, that "if a provision of one statute receives a judicial construction, and is inserted in another, the same construction will be given to it; but when the clause varies, it shows a different intention in the legislature. *Rutland* v. *Mendon*, 1 Pick. 154. It will be proper to examine the statutes under which the case of *Commonwealth* v. *Cheney* was decided, and those of the Revised Statutes upon the same subject, in order to ascertain, whether they are so substantially the same, that the legislature are presumed to have adopted in the latter the construction given to the former in that case.

The statute of 1783, c. 51, empowered justices of the peace to hold to bail all persons guilty, or suspected to be guilty, of the offences of which they had not cognizance, certain high crimes excepted ; and to take cognizance of, or examine into all other crimes, matters and offences which by particular laws are put under their jurisdiction. The statute of this State, c. 76, passed in 1821, contains similar language. By the Revised Statutes, c. 170, entitled " of the power and proceedings of justices of the peace in criminal cases," § 3, it is provided, that " when complaint shall be made in due form to any justice of the peace, alleging any offence to have been committed, and praying for a warrant to be issued against the person charged, the justice shall carefully inquire of the complainant on oath into the circumstances of the case, and if he shall be satisfied, that the person charged committed the offence alleged, he shall issue his warrant." Sect. 5, provides, that when the offence is of a high and aggravated nature, the person arrested (in the manner before provided) and in custody, may be committed or bound over for trial to the Court having jurisdiction of the case. Chapter 171 of the Revised Statutes, entitled, " of the commencement of proceedings in criminal cases," § 1, empowers justices of the peace to issue process, to carry into effect the provisions of this chapter. And § 2, provides, that when complaint shall be made to him, that a criminal offence has been committed, he shall examine the complainant on oath and any witnesses he may produce, and if it shall appear, that any such offence has been committed, and there is reason to believe that the person charged is guilty, he shall issue his warrant, stating the substance of the charge, and requesting the officer to whom it is directed, forthwith to arrest the person accused and bring him before such justice, or some other magistrate of the county, to be dealt with according to law ; and in the same warrant may require the officer to summon such witnesses as shall be therein named, to appear and give evidence on the examination. By § 17, " If it shall appear that an offence has been committed, and that there is probable cause to believe the prisoner guilty, and

if the offence be bailable by such magistrate, and sufficient bail be offered, it shall be taken and the prisoner discharged, but if the offence is not bailable by the magistrate, or no sufficient bail be offered, the prisoner shall be committed to prison to await his trial."

The statute of 1787, c. 68, entitled "an act for the due regulation of licensed houses," makes criminal certain acts, which are made so likewise by the Revised Statutes of this State, c. 36, and in each, two modes are provided for recovering the forfeiture incurred ; the former by information or indictment ; the latter, by an action of debt in the name of the person prosecuting, or of the town or plantation, where the offence may have been committed, or by indictment. But in the act of 1787, a moiety of the penalty is appropriated to the use of the prosecutor, and the other moiety to the county in which the offence may have been committed, excepting when the prosecution is by a grand jury before the Supreme Judicial Court, or Court of general sessions of the peace, in which case, the whole forfeiture is to the use of the county. In the Revised Statutes the penalty enures wholly to the town, in which the offence may be committed, whether it be obtained in one mode or the other.

It will be seen that the *duties* of justices of the peace are more specifically pointed out and defined in the Revised Statutes, than they were by the act of 1783, and their *powers* are also materially different in one from the other. In that of 1783, they were empowered to hold to bail, when they *suspected* the person accused to be guilty. In the Revised Statutes, it is made their duty to issue a warrant on being satisfied of the truth of the charge, and only in such case ; and to bind over and commit the person on having *probable cause,* to believe him guilty.

Judge Parsons in the opinion, in the case referred to by the plaintiff, says, "the reasoning of the counsel for the Commonwealth would be conclusive, if the statute enacting the offence, had not so appropriated the forfeiture, and provided the mode of recovering it, as by necessary implication, to ex-

clude the offence.": The reason given for the exception of
this offence from the operation of the statute of 1787, cannot
fully apply under the statute now in force, as the forfeiture,
in no mode of prosecution, and in no event, can enure to the
benefit of any other, than the town or plantation in which
the offence may be committed. It is quite certain that the
rule of construction invoked by the plaintiff's counsel does not
apply ; the statutes under which that decision was made are
not only in terms very different from those in the Revised
Statutes, but the provisions of the two are substantially un-
like.

2. Was the defendant as a justice of the peace authorized
to order the plaintiff to be committed, on his failure to recog-
nize with surety to appear at the District Court ?

The statutes which we are now considering, like all others,
are to be so construed, that they may have a reasonable effect,
agreeably to the intent of the legislature. Courts may give a
sensible and reasonable interpretation to legislative expressions,
which are obscure, but they have no right to distort those,
which are intelligible ; neither is the language of a statute to
be enlarged or limited by construction, unless its object and
plain meaning require it.

It will be noticed that in the Rev. Stat. justices of the
peace have, by the language used, the same power, and are
bound by the same duties in those cases where the prosecution
is by indictment only, as in those, where the prosecution may
be by action of debt, or by indictment. The language used
is clear, unambiguous, and comprehends all offences, not cog-
nizable by a justice of the peace. Such being the case, some
manifest inconvenience, or palpable injustice, must be shown
to result from the adoption of the literal meaning, before we
can be authorized to say that a different intention was enter-
tained by the legislature. It would have been easy to have
incorporated the exception, which it is contended is implied, if
such exception was in fact intended ; but if their meaning was
otherwise, to have provided, that the power of justices to hold
to bail, should extend to all cases where two modes of recov-

ery of the forfeitures were prescribed, would be but a senseless repetition of the same provision in different terms.

There are many statutes of the United States, creating offences, which are punished by pecuniary forfeitures, a part of which in each case, are to the use of the person informing and prosecuting therefor, and the other part to the use of the United States; and such penalties may be recovered by suit, or by prosecutions in a criminal form. As an example, may be mentioned, "An act to reduce into one, the several acts, establishing and regulating the postoffice department," passed March 3, 1825. It is believed to be almost an uniform practice in prosecutions for the recovery of such forfeitures, to enter a complaint before a justice of the peace, that the accused may be arrested on a warrant, and held to answer at a tribunal having cognizance of the offence ; and yet on the principle contended for by the plaintiff's counsel, all such prosecutions are unauthorized, and if followed by a commitment of the accused to prison, subject the magistrate to an action for damages.

This practice, which has so long prevailed, was unauthorized, if the case of *Commonwealth* v. *Cheney*, was a proper construction of the statutes under which it arose. No decided case was referred to by the Court, and we are not aware that its doctrines have been reaffirmed. By that interpretation of the statutes, persons might persist in the most palpable violations of the license laws for a considerable time, and by absconding before a grand jury could act upon the subject, escape all punishment in a criminal form. Whether such an exemption was intended by the authors of those statutes, or would result from the language used therein, we may be permitted to doubt, without directly impugning the authority of that case ; for it may still remain as the construction of statutes no longer in force, and which have been replaced by those, which are essentially different.

The law of 1787 held out to individuals inducements to commence prosecutions by information, for a violation of its provisions, by giving a moiety of the penalty to the informer ;

he entitled himself thereto on filing the information, before giving notice to the accused; and his right thus acquired ought not to be taken away by the interposition of a prosecution for the same offence in the other mode; and it was therefore held, that an exception was so clearly implied, that the legislature intended it. But by the present law, the town, where the offence is committed, is alone entitled to the forfeiture, and the only loss to which one, who may commence a civil suit, can be subjected in any event, will be the costs, which may arise, before it becomes known, that the different modes of prosecution have been both resorted to; this is what would seldom happen, and we think the legislature are not to be presumed, against the express language of the statute, to have intended the exception for such a remote contingency. The same inconvenience might arise on the ground, that the criminal form of prosecution, is limited to an indictment; a civil suit may be commenced, so short a time before the finding of a bill, that neither the grand jury, the attorney for the State, or the complainant, may have knowledge of it, and no service of the writ be made upon the person charged therein.

A further reason for supposing, that the authors of the law, intended what the language imports without the exception, which it is insisted is implied, is found in Revised Statutes, c. 36, § 22, which provides that no prosecuting officer shall discontinue any legal process, commenced or to be commenced, under the provisions of this chapter, except by the direction of the Court, before whom the same may be pending. By prosecuting officers we understand those officers whose duty it is to take charge of criminal proceedings in behalf of the State; and the prohibition in the section referred to is not limited to indictments, but will extend to warrants issued by magistrates, implying that other forms of criminal prosecution, than indictments may have been intended. Besides, is it to be presumed, that when the legislature denied to the prosecuting officers of the State, the exercise of a discretion in this particular, which they possess over criminal matters generally, they intended to allow an individual, friendly to those who per-

sist in a violation of the law, by a private suit, in his own name, to defeat every indictment, which a grand jury might present; and such private suit, to discontinue at pleasure, or suffer to remain pending for the protection of the accused. Bills of indictment can be found only after long intervals ; and before the sitting of the Court having jurisdiction, attended by a grand jury, civil suits over which prosecuting officers, and those interested to have the law enforced in the criminal form prescribed, may be commenced, and thereby annul in effect, the statute, so far as it provides for a recovery of the penalty by indictment. The legislature supposed it important, that penalties should be recovered in both modes pointed out. We think injustice and oppression would not be produced by the adoption of a literal construction of the statute ; but by attributing to the legislature an intention to forbid justices of the peace to exercise the power, with which they are vested over other criminal matters, might lead in some measure at least to defeat the object evidently sought by the authors of the statute. The conclusion to which we come is, that the acts of the justice complained of in the action, were fully authorized by virtue of the complaint and the warrant which were legally made and duly returned to him, on the arrest of the plaintiff.

*Exceptions are sustained.*